**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
TAX DEFENDER, LLC and SAVANNAH       :
RECORDS, LLC,                          :
                                         :
                   Plaintiffs,       :
                                         :
    -against-                       :
                                         :     **VERIFIED COMPLAINT**
LINDSAY OTT,                     :
                                         :
                   Defendant.      :
-----------------------------------------------------------------x

       Plaintiffs Tax Defender, LLC ("TDL") and Savannah Records, LLC ("Savannah Records"), by and through its attorneys, Redmond Law, PLLC, as and for its verified complaint against defendant Lindsay Ott ("Ott") hereby respectfully alleges as follows:

## NATURE OF THE CASE

      1.    Plaintiffs bring this action for injunctive relief and damages in order to enforce and protect their rights and defendant's obligations pursuant to the terms of the Independent Contractor Agreement between TDL and Ott, entered into on or about Autumn of 2020 ("Agreement"), and other damages arising out of Ott's misappropriation of TDL's corporate assets, unlawful conversion, breach of fiduciary duty and of loyalty, breach of contract, defamation, permanent injunction, temporary injunction, fraudulent misrepresentation, tortious interference with business relations and opportunities, fraudulent misrepresentation and property damage. Ott has breached the Agreement, converted company owned assets consisting of confidential proprietary information, trade secrets and intellectual property and refuses to cease tortiously interfering with TDL's business operations.

## THE PARTIES

      2.    TDL is a company properly formed under the laws of the State of New York with its principal place of business located at 40 Wall Street, Suite 707, New York, New York

1

10005.

3.      Savannah Records is a corporation properly formed under the laws of the State of Wyoming with places of business located at 30 N. Gould Street, Suite R, Sheridan, WY 82801 and 40 Wall Street, Suite 707, New York, New York 10005.

4.      Upon information and belief, Ott is a citizen of the State of New York residing at 37 Wall Street, New York, New York 10005.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court pursuant to 28 UCS §1332 and because the parties have expressly agreed that jurisdiction and venue for all disputes arising out of the Agreement shall be brought in the courts for the County of New York, ergo, the United States District Court for the Southern District of New York is appropriate.

6.      Venue is proper in this Court pursuant to 28 UCS §1391 and because the parties have expressly agreed that jurisdiction and venue for all disputes arising out of the Agreement shall be brought in the courts for the County of New York, ergo, the United States District Court for the Southern District of New York is appropriate.

## FACTS COMMON TO ALL CAUSES OF ACTION

7.      TDL operates in New York City and Metropolitan area in the State of New York and is engaged in business concerning affordable accounting, bookkeeping and tax resolution services.

8.      In this capacity, TDL has many clients in a number of industries.

9.      On or about Autumn of 2020, TDL retained Ott as an independent contractor to perform various tasks, including, providing tax-related services and advice, pursuant to the Agreement.

10.     As per the Agreement, Ott was retained as an independent contractor and not

an employee of TDL.

11.     During the term of the Agreement, Ott served in a senior position with access to confidential information and other valuable resources and assets of TD TDL USA not accessible to the public in which TDL has a legitimate protectible business interest to which Ott would not have had access to but for her retention as an independent contractor.

12.     Upon information and belief, Ott has never run a corporation and was not aware of or knowledgeable about the business strategy of TDL prior to her retention.

13.     The confidential information Ott had access to was solely by virtue of her relationship with TDL as an independent contractor as provided for at Section 14A of the Agreement:

> "Confidential Information" means any and all data and information, whether disclosed orally, in writing, by observation, or otherwise, relating to TDL's operations or those of TDL clients of which [Ott] becomes aware as a consequence of, during, or through [Ott's] affiliation with TDL which is not generally known to others outside of TDL or the public.  Confidential information covered by this Agreement does not have to be marked "Confidential" or qualify as a Trade Secret to be treated as confidential under this Agreement. Confidential information includes, without limitation, " any form of information about TDL, or any of its clients, customers, vendors, or employees or contractors that is not generally known to TDL's competitors or the general public, including: (a) confidential, secret, and/or proprietary knowledge, data, or information; (b) any "trade secret," as defined by applicable state and federal law governing the use of trade secrets; (c) all TDL's (and/or TDL' client's) business methods, operations, plans, projects, budgets, projections, organizational strategies, anticipated projects, proposals, or initiatives, technical data, technology, software, hardware configuration, finances, prices and costs, pricing plans and strategies, sales information and techniques, market studies, marketing plans or practices, competitive analyses, accounts receivable or payable information, billing methods, pricing policies, cost of services or cost of goods information, client development information and techniques, client acquisition strategies, methods and techniques, lead and client sourcing information, sales pitches, unique business methods and practices, accounts receivable or payable, pricing policies, product designs and technology,

information technology infrastructure, electronic and social marketing plans or algorithms, electronic coding and/or other web-related algorithms, customized programs that have been designed and created by TDL, and other non-public financial information; and (d) all TDL client, customer, or vendor names, contact information, lists, financial information, data, and organizational practices; (e) all non-public sensitive and private financial account numbers and other sensitive identity-related Personal Identifiable Information (such as social security or tax ID numbers) for any customer, supplier, vendor, distributor, and/or employee or contractor of TDL; (f) marketing information, such as marketing ideas, mailing lists, the identity of the TDL's customers, partners, investors, and/or vendors, their names and addresses, the names of representatives of the TDL's vendors, customers, and investors responsible for entering into contracts with TDL, the financial arrangements between the TDL and any customers, vendors, and/or partners, specific customer or vendor or investor needs and requirements, and leads and referrals to prospective customers, vendors, or investors; and (g) personnel information, such as the identity and number of TDL's employees, consultants and contractors, their salaries, bonuses, benefits, skills, qualifications, and abilities.

14.     Ott "agree[d] that TDL has taken reasonable steps under the circumstances to maintain the secrecy of the aforementioned Confidential Information," pursuant to Section 14A of the Agreement.

15.     Pursuant to the Agreement, Ott agreed that the Confidential Information of TDL provides TDL with a competitive advantage in the marketplace and that TDL has invested and continues to invest substantial time, money and specialized knowledge into developing Confidential Information, including its client base, client lists, and providing specialized training to its employees and independent contractors in the fields of accounting, bookkeeping and tax resolution services.

16.     In addition, pursuant to the Agreement, Ott and acknowledged that TDL's ability to preserve the Confidential Information for the exclusive knowledge and use of TDL is of great competitive importance and commercial value to TDL, and that improper use or disclosure by Ott is likely to result in unfair or unlawful competitive activity.

17.    Pursuant to Section 14B of the Agreement, Ott agreed:

At all times during and subsequent to [Ott's] relationship with TDL, [Ott] shall not, directly or indirectly, use, permit use of, disclose, discuss, publish, access or disseminate in any manner, any secret, confidential, or proprietary information of TDL (referred to as "Confidential Information," as more fully defined herein), except as necessary in the performance of [Ott's] performance of Services, and for the sole benefit of TDL. Any use or disclosure of Confidential Information for any other purpose, or for [Ott's] own use and benefit or the use of benefit of any other person or entity, shall be deemed to be improper and without authorization.

All Confidential Information, files, and/or equipment, hardware or software provided to the [Ott] by TDL shall be the TDL's sole property during and after [Ott's] relationship with TDL. [Ott] agrees that employees selected by [Ott] to provide Services will not remove any hard or electronic copies (including via email to personal email or cloud service, saving, copying or downloading to a personal storage or memory device or to a personal electronic phone or tablet) of Confidential Information from TDL's servers or locations, without permission of TDL's CEO, in writing, and will not print hard copies of any Confidential Information that [Ott] or [Ott's] employees access (electronically or otherwise) from a remote location, absent written permission to do so.  [Ott] also understands that [Ott] may not maintain on any private storage or electronic account any of TDL's Confidential Information or data, in hard copy or electronic form, after [Ott's] relationship with TDL has ended.

[Ott] will immediately return to TDL all Confidential Information, files, hardware or equipment (such as files, portable storage devices, etc.) no longer being used by [Ott] in the provision of Services, or at any time upon TDL's request, or upon termination of the [Ott's] relationship with TDL for any reason. [...] [Ott] will not retain, access, or use Confidential Information covered by this Agreement in any form [...] after the Parties' relationship has ceased. [...] [Ott] shall not modify any passwords on accounts, files or equipment provided by TDL without first disclosing to TDL the new password.

18.    Ott agreed her obligations under the Agreement to keep Confidential Information confidential commenced at the time she first had access to any such Confidential Information and that her obligation to keep such confidential until it has been "voluntarily disclosed to the public [...] or that has independently developed and disclosed by others, or

5

that otherwise enters the public domain through lawful means." §14A.

19.     For good and valuable consideration, pursuant to Section 14D, Ott agreed, for a period of eighteen (18) months following the termination of the Agreement, "not [to], directly or indirectly (in any capacity [...]): solicit, contact, do business with or accept business from, call upon, communicate with or attempt to communicate with (for business purposes) any TDL customer or prospective customer with a view to selling or providing any Competitive Services. [Ott] also shall not divert, attempt to divert, or otherwise interfere with or harm any contract or business relationship which exists/existed between TDL and any specific prospective or existing Customer." §14D.

20.     Following the termination of the Agreement, Ott called TDL's past, existing and prospective Customers for the purpose of defaming TDL, intentionally interfering with TDL's business relations and opportunities.

21.     By executing the Agreement Ott represented that she had "carefully read and considered the [restrictive covenants...], and having done so, agree[d] that [they] are fair and reasonable and are reasonably required to protect the legitimate interests of TDL and its clients." Ott made "this representation specifically in light of the fact that they have access to confidential plans of TDL (and its clients) for its operations, strategies for growth, expansion, customer preferences, product offerings, and pricing structures." §14G3.

22.     Ott also agreed that if any of the restrictive covenants "are found to be unenforceable, an enforceable covenant shall be substituted that preserves, to the maximum lawful extent, the scope, duration and all other aspects of the covenants deemed enforceable, and that the covenant so substituted shall be immediately enforceable against [her]." §14G4.

23.     The Agreement also provides that "[Ott] agree[d] that the [...] Agreement shall be enforceable regardless of TDL's conduct. In other words, [Ott's] claim or belief that TDL

6

has in any way breached any agreement or engaged in any wrongful conduct with regard to [Ott] shall not in any way limit or impair TDL's ability to enforce the covenants in this Agreement, and shall not bar or limit the relief TDL's may seek based on [Ott's] breach or threatened breach, including TDL's right to temporary or permanent injunctive relief. [Ott] shall not be permitted to assert, as a defense to the enforcement of the Restrictive Covenants in Paragraph 14 herein or in justification of [Ott's] own breach, that TDL has in any way breached this Agreement or any other duty related to [Ott]." §15.

24.     Ott "acknowledge[d] and agree[d] that TDL would suffer great and irreparable harm if [she] should breach or violate any of the terms or provisions of the [...] Agreement [and that] [i]n the event that [she] should breach or violate any provision [...], [she] agrees and consents that TDL shall be entitled to a temporary restraining order/injunction to prevent or remedy a breach or threatened breach of any of the [...] Agreement" as well as "pursuing any and all other damages and remedies allowed by law against [Ott]." §17.

25.     On or about August 9, 2021, TDL terminated the Agreement after Ott failed to perform her services satisfactorily.

26.     Upon information and belief, Ott printed, copied, took or otherwise misappropriated TDL's Confidential Information, including, but not limited to, client lists and information and account passwords.

27.     Upon information and belief, the Confidential Information taken by Ott was taken for the purposes of shutting down TDL's Instagram account and/or making defamatory comments to Instagram for purposes of interfering with, sabotaging and harming TDL's Instagram and good will and reputation and to provide TDL's Competing Businesses a competitive advantage.

28.     Upon information and belief, Ott built fake accounts and failed to comply with

relevant law to specifically injure TDL's goodwill and reputable business reputation.

29.     Upon information and belief, Ott solicited and continues to solicit TDL's clients for purposes of interfering with TDL's goodwill, business relations and opportunities.

30.     Upon information and belief, Ott obtained employment or otherwise formed a business relationship with a Competing Business prior to the expiration of the eighteen (18) month non-compete timeframe set forth under the Agreement.

31.     As a result of Ott's bad faith conduct, TDL has suffered financial losses and clientele.

32.     Upon information and belief, Ott will continue to interfere with the business of TDL, including, but not limited to, soliciting clients and other businesses contracted to do work with TDL and contacting them for the sole purpose of harming TDL's goodwill, business relations and opportunities.

33.     Tremendous effort and expense have been expended in developing the business relationships and clients of TDL.

34.     Ott has and continues to violate her fiduciary duties, loyalty duties and obligations under the Agreement as set forth herein, including, but not limited to, taking and disclosing Confidential Information, defaming TDL and its employees and independent contractors and others associated therewith, soliciting and stealing TDL's client information, and intentionally interfering with the business of TDL.

35.     Pursuant to the Agreement, Ott agreed "to indemnify, defend, and hold harmless TDL and its parents, subsidiaries, affiliates, directors, officers, employees, agents, owners, successors and assigns from and against all [...] losses, damages, [...] costs, or expenses, including, but not limited to reasonable attorney's fees, and causes of action on account of illness, personal injury or death to employees or any other persons, damage

8

to property of TDL or others or other loss or liability which may arise from the [her] negligence or concurrent negligence in performing under [the] Agreement or [her] gross negligence, willful misconduct or strict liability." §19.

36.     Savannah Records is an affiliate of TDL and Thomas Cahill is the CEO of both companies.

37.     From time to time, Savannah Records shares an office space with TDL at 40 Wall Street, New York, NY.

38.     A 2021 Lamborghini, Huracan Spyder is owned in the names of Savannah Records and its CEO and TDL's CEO.

39.     Upon information and belief, on or about July 8, 2022, between approximately 12:00am and 1:30am, while the Lamborghini was parked outside of TDL/Savannah Records at 40 Wall Street, New York, New York, Ott intentionally, maliciously and willfully attacked the car unknown instruments and substances, causing severe damage to it.

40.     Upon information and belief, there are eye witnesses to Ott damaging the Lamborghini.

41.     Upon information and belief, Ott has confessed to damaging the Lamborghini to at least one police officer who, upon information and belief, advised Ott to cease and desist calling and texting the CEO, yet Ott has failed and refused to do so.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

42.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

43.     The Agreement constitutes a valid and enforceable contract between TDL

and Ott.

44.     TDL performed all contractual duties and obligations under the Agreement.

45.     The Agreement prohibits Ott from disclosing Confidential Information as defined by the Agreement.

46.     Upon information and belief, Ott took Confidential Information of TDL to use for the purpose of interfering with TDL's competitive business advantages, to disclose and otherwise make public.

47.     Ott has and continues to violate her duties and obligations under the Agreement, including, but not limited to, disclosure of Confidential Information.

48.     As a result of the foregoing, Ott breached the Agreement causing TDL losses and damages in an amount to be determined at trial but not less than $250,000.00, plus reasonable attorneys' fees pursuant to the Agreement.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

49.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

50.     The Agreement constitutes a valid and enforceable contract between TDL and Ott.

51.     TDL performed all contractual duties and obligations under the Agreement.

52.     The Agreement prohibits Ott from engaging in business that competes with TDL for a period of eighteen (18) months following the termination of the agreement.

53.     The Agreement was terminated on or about August 9, 2021.

54.     Upon information and belief, Ott has engaged in a business relationship with a Competing Business prior to the expiration of the eighteen (18) month non-compete

10

time period.

55.     Ott has and continues to violate her duties and obligations under the Agreement, including, but not limited to, violating the non-compete restrictive covenant.

56.     As a result of the foregoing, Ott breached the Agreement causing TDL losses and damages in an amount to be determined at trial but not less than $250,000.00, plus reasonable attorneys' fees pursuant to the Agreement.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Breach of Covenant of Good Faith and Fair Dealing)**

57.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

58.     The Agreement constitutes a valid and enforceable contract between TDL and Ott.

59.     TDL performed all contractual duties and obligations under the Agreement.

60.     However, under New York law, a covenant of good faith and fair dealing in the course of contract performance is implicit in all contracts and obligates the parties to fulfill their promises and to not act in any manner that would deprive the other party from receiving the fruits of the contract.

61.     Ott intentionally performed her job obligations in a manner that harmed TDL and were carried out in bad faith in order to deprive TDL of the benefit of their bargain.

62.     Ott engaged in such bad faith to destroy and injure TDL's rights and benefits under the Agreement.

63.     As a result of the foregoing, Ott breached the covenant of good faith and fair dealing causing TDL losses and damages in an amount to be determined at trial but not

less than $250,000.00, plus reasonable attorneys' fees pursuant to the Agreement.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (Common Law Misappropriation)

64.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

65.     The elements of misappropriation of a trade secret include: (1) possession of a trade secret, and (2) defendant using that trade secret in breach of an agreement, confidence, or duty, or as a result of discovery by improper means. *Integrated Cash Mgmt Servs., Inc. v. Digital Transactions, Inc*., 920 F.2d 171, 173 (2d Cir. 1990) (citations and quotations omitted).

66.     TDL's Confidential Information as defined by the Agreement constitutes trade secrets, including without limitation its client lists, techniques, training and other information that provides TDL an advantage over competitors.

67.     Ott, without authorization or consent TDL, removed proprietary data and Confidential Information belonging to TDL in breach of her fiduciary duty to TDL pursuant to the Agreement.

68.     Ott continues to use this information in derogation of TDL's proprietary rights.

69.     As a result of the foregoing, Ott has wrongfully misappropriated TDL's confidential and proprietary information causing TDL losses and damages in an amount to be determined at trial but not less than $250,000.00, plus reasonable attorneys' fees pursuant to the Agreement and pre- and post-judgment interest.

### AS AND FOR A FIFTH CAUSE OF ACTION
### (Common Law Conversion)

70.     Plaintiffs repeat and reallege each and every allegation set forth in the

12

preceding paragraphs of the Complaint as if fully set forth herein.

71.    At all times relevant, TDL maintained its proprietary data and Confidential Information on TDL's premises and or in its computers and or files.

72.    Upon information and belief, Ott intentionally accessed TDL's property to view and take TDL's proprietary data and Confidential Information.

73.    Upon information and belief, Ott used TDL's proprietary data and Confidential Information to benefit herself at the detriment of TDL.

74.    Through these acts, which Ott performed without authorization or permission, she denied or substantially interfered with TDL's possession of its proprietary data and Confidential Information.

75.    As a direct and proximate cause of Ott's bad faith and wrongful actions, TDL has been and will continue to be severely and irreparably injured and therefore seeks compensatory damages, punitive damages, reasonable attorneys' fees and costs and equitable relief.

<u>**AS AND FOR AN SIXTH CAUSE OF ACTION**</u>
**(Property Damage and/or Breach of Contract)**

76.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

77.    The Agreement constitutes a valid and enforceable contract between TDL and Ott.

78.    TDL performed all contractual duties and obligations under the Agreement.

79.    The Agreement prohibits Ott from damaging to property of TDL or others or other loss or liability and to indemnify, defend and hold harmless TDL and its parents, subsidiaries, affiliates, directors, officers, employees, agents, owners, successors and

assigns from and against all such losses.

80.    Savannah Records is an affiliate of TDL and Thomas Cahill is the CEO of both companies.

81.    From time to time, Savannah Records shares an office space with TDL at 40 Wall Street, New York, NY.

82.    A 2021 Lamborghini, Huracan Spyder is in the names of Savannah Records and its CEO and TDL's CEO.

83.    Upon information and belief, Ott has knowledge of the relationships amongst the entities and that the car was in the name of Savannah Records and its CEO.

84.    Upon information and belief, on or about July 8, 2022, between approximately 12:00am and 1:30am, the Lamborghini was parked outside of TDL / Savannah Records at 40 Wall Street, NY, NY, Ott intentionally, maliciously and willfully attacked the car with unknown instruments and substances, causing severe damage to it.

85.    Upon information and belief, there are eye witnesses to Ott's conduct.

86.    Upon information and belief, Ott has confessed to damaging the Lamborghini to at least one police officer who, upon information and belief, advised Ott to cease and desist calling and texting the CEO, yet Ott has failed and refused to do so

87.    As a direct result of Ott's intentionally, malicious and willful destruction of property, plaintiffs have been and will continue to be severely and irreparably injured and therefore seek compensatory damages, punitive damages, reasonable attorneys' fees and costs and equitable relief in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Tortious Interference with Business Relations and Opportunities)

88.    Plaintiffs repeat and reallege each and every allegation set forth in the

preceding paragraphs of the Complaint as if fully set forth herein.

89.    Ott had full knowledge of the existence of a business relationship between TDL and each of its clients and business partners.

90.    Despite knowledge of the existence of a business relationship between TDL and each of its clients and business partners, Ott has interfered and continues to interfere with TDL's business relationships with its clients and business partners.

91.    Ott's acts were and are intentional and carried out for the purpose of disrupting TDL's relationships with its clients and business partners.

92.    As a direct result of Ott's conduct, TDL has suffered damages in an amount to be determined at trial.

93.    Ott has acted in an egregious, malicious, willful and wanton manner, and in bad faith when committing these acts and omissions and as a result, TDL is entitled to punitive damages.

94.    As a result of the foregoing, Ott has caused TDL great damage, including damage to TDL's reputation in the industry, and TDL has suffered irreparable harm as a result of Ott's conduct and will continue to suffer irreparable harm, which cannot be adequately redressed at law, unless Ott is enjoined from engaging in any such conduct.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Tortious Interference with Prospective Business Relations)

95.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

96.    Upon information and belief, absent Ott's interference with TDL's prospective business relationships with companies, such relationships would have resulted in contractual and actual business relationships.

97.     Upon information and belief, Ott used unfair, illegal, and improper means to interfere with TDL's potential and actual contractual and business relationships and continues to do so.

98.     As a direct result of Ott's conduct, TDL has suffered damages, including damages to TDL's reputation in the industry, all in an amount to be determined at trial.

99.     Ott has acted in an egregious, malicious, willful and wanton manner, and in bad faith when committing these acts and omissions and as a result, TDL is entitled to punitive damages.

100.    As a result of the foregoing, Ott has caused TDL great damage, including damage to TDL's reputation in the industry, and TDL has suffered irreparable harm as a result of Ott's conduct and will continue to suffer irreparable harm, which cannot be adequately redressed at law, unless Ott is enjoined from engaging in any such conduct.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Defamation)

101.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

102.    Pursuant to the Agreement, Ott agreed to not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning TDL or its businesses, or any of its employees, officers, independent contractors, existing and prospective customers, suppliers, investors and other associated third parties.

103.    Upon information and belief, Ott has made false statements about TDL regarding, among other disparaging remarks, the quality and performance of its services.

104.    Upon information and belief, Ott's false statements were made to TDL's

clients and business partner(s).

105.    Upon information and belief, Ott knew, or should have known, that the statements were false at the time of their utterance.

106.    As a result of the foregoing, Ott has breached the Agreement causing TDL losses and damages in an amount to be determined at trial but not less than $250,000.00, plus reasonable attorneys' fees pursuant to the Agreement, pre- and post-judgment interest, and TDL will continue to suffer unless Ott is enjoined from engaging in any such conduct.

## AS AND FOR AN TENTH CAUSE OF ACTION
### (Indemnification and Attorneys' Fees)

107.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

108.    Pursuant to the Agreement, Ott "agree[d] to indemnify, defend, and hold harmless TDL and its parents, subsidiaries, affiliates, directors, officers, employees, agents, owners, successors and assigns from and against all liabilities, losses, damages, demands, claims, actions, suits, settlements, judgments, costs, or expenses, including, but not limited to reasonable attorney's fees, and causes of action on account of [...] damage to property of TDL or others or other loss or liability which may arise from the [Ott's] negligence or concurrent negligence in performing under this Agreement or [Ott's] gross negligence, willful misconduct or strict liability." §19.

109.    As set forth herein, TDL has suffered and continues to suffer as a result of Ott's negligence or concurrent negligence in performing under the Agreement and/or her gross negligence, willful misconduct or strict liability.

110.    As set forth above, Ott has breached the restrict covenant obligations under the Agreement.

111.    As a result of the foregoing TDL is entitled to all costs, expenses and reasonable attorneys' fees and costs that TDL has incurred and will continue to incur in the course of enforcing the terms of the Agreement.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION
**(Temporary Restraining Order or Permanent Injunction)**

112.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs of the Complaint as if fully set forth herein.

113.    Pursuant to the Agreement, in the event of a breach or threatened breach by Ott of the Agreement, Ott acknowledged and agreed that TDL would suffer great and irreparable harm, and agreed and consented that TDL shall be entitled to, in addition to other available remedies, a temporary restraining order/injunction to prevent or remedy a breach or threatened breach of any of the Agreement.

114.    As set forth herein, Ott has committed various breaches of the Agreement, including breaching the non-competition, non-solicitation and non-disclosure clauses, which has caused and continues to cause TDL irreparable harm.

115.    In addition, Ott's acts in competing with TDL have caused and will continue to cause irreparable harm to TDL including the irreparable injury to and loss of competitive advantage, clients and business relationships.

116.    Ott's use of confidential and proprietary information to compete with TDL has caused and will continue to cause irreparable harm to TDL, including the irreparable injury to, and loss of competitive advantage, clients and business relationships.

117.    Ott's solicitation of clients, business partners and others with whom TDL enjoys productive business relationships has caused and will continue to cause irreparable harm to TDL including the loss of good will, reputation, clients, business relationships and

18

other valuable business assets.

118.    Ott's utterance of derogatory and defamatory comments to clients, partners, and others with whom TDL enjoys productive business relationships has caused and will continue to cause irreparable harm to TDL including the loss of good will, reputation, client relationships, talent, and other valuable business assets.

119.    TDL has no adequate remedy at law.

120.    Ott should be permanently enjoined from taking further action that will cause injury to TDL.

**WHEREFORE**, plaintiffs respectfully request that the Court:

(a) enter judgment in favor of plaintiffs and against defendant granting plaintiffs:

    i.    damages in an amount to be determined at trial but not less than $250,000.00;

    ii.    reasonable attorneys' fees, costs and disbursements;

    iii.    compensatory damages and punitive damages;

    iv.    pre- and post-judgment interest;

(b) enter an Order enjoining defendant from:

    i.    using plaintiffs' confidential or proprietary data, trade secrets and information;

    ii.    engaging in unfair competition, tortious interference with plaintiffs' business relations;

    iii.    engaging in unfair competition, tortious interference with plaintiffs' prospective business relations; and

    iv.    uttering or disseminating defamatory or disparaging remarks, comments or statements concerning plaintiffs and/or its businesses or any of its employees, officers, independent contractors, existing and prospective customers, suppliers, investors and other associated third parties;

(c) granting a permanent injunction against defendant from:

    i.    continuing to breach the Agreement;

    ii.    competing with plaintiffs;

      iii.  using plaintiffs' proprietary data, trade secrets and Confidential Information to compete with plaintiffs; and

      iv.  soliciting clients, business partners and others with whom plaintiffs enjoys productive business relationship;

      v.  uttering of derogatory and defamatory comments to clients, partners, and others with whom plaintiffs enjoys productive business relationships

(d)  granting plaintiffs such other and further relief as the Court deems just and proper.

Dated:  New York, New York
         August 2, 2022

                                     Respectfully submitted,

                                     REDMOND LAW PLLC
                                     *Attorneys for plaintiffs*

By: _____
                                     Michelle Callner (MC 1525)
                                     80 Broad Street, Ste. 1202
                                     New York, New York 10004
                                     Tel: (212) 799-8989
                                     Fax: (212) 461-7189
                                     mcallner@redmondpllc.com

## **VERIFICATION**

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the statements set forth in the foregoing Verified Complaint are true and correct except as to statements made upon information and belief.

Dated:  New York, New York
        August 2, 2022

 

Thomas Cahill, CEO, Tax Defenders, LLC, and Savannah Records, LLC